| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | |
| NUDAY, a/k/a NUDAY SYRIA, | ) ) | No. 23-cr-72-JL |
| Defendant | ) ) ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The defendant flouted export licensing requirements and ultimately shipped over 100 containers overseas purportedly worth more than $100 million to Syria and other countries without legal approval. Nevertheless, the defendant is a humanitarian non-profit organization and has since taken remedial steps, including hiring an expert to ensure its compliance with export laws and removing Nadia Alawa and her family members from any involvement at the charity. Accordingly, and for the following reasons, the Government respectfully requests the Court impose the parties' stipulated sentence of five years of probation and a $25,000 fine, which is near the statutory maximum penalty.

## I. Factual Background

Nadia Alawa founded NuDay in February 2013. PSR ¶ 7. It is a 501(c)(3) non-profit and thus exempt from paying taxes. PSR ¶ 7. Nevertheless, as a charity NuDay must still file annual tax returns and comply with recordkeeping requirements. PSR ¶ 7. Alawa served as the charity's President, and several family members (including her husband and adult children) served as board members and employees. PSR ¶ 10.

NuDay's organizing documents indicate it was founded to assist families displaced by the Syrian civil war. PSR ¶ 9. After several years, NuDay expanded its operations to provide

charitable services in other nations, including Turkey, Lebanon, Yemen, and Ukraine.  PSR ¶ 9.

The Export Control Reform Act (ECRA) and its predecessor, the International Economic Emergency Powers Act (IEEPA), give the President the power to implement restrictions on exports for national security purposes.  PSR ¶ 11.  As relevant here, the Commerce Department promulgated regulations called the Export Administration Regulations (EAR).  PSR ¶ 11.  The EAR requires a license to export or re-export goods for certain countries, such as Syria.  PSR ¶ 12.  Moreover, an individual exporting goods must file an Electronic Export Information (EEI) in the Automated Export System (AES) for all exports either valued over $2,500 or requiring a license.  PSR ¶ 12.  The exporter is responsible for providing detailed information about the goods being exported, including the ultimate end-user and value.  PSR ¶ 12.  This is so that our Government can ensure that goods and technologies do not end up in the hands of parties who are hostile to the United States.   NuDay was aware of the licensing requirement.  PSR ¶ 19.  In fact, Nadia Alawa's Facebook records indicate that she and NuDay were aware of restrictions on exports to Syria but nevertheless ignored them.  PSR ¶¶ 28-29.

Over the past ten years, NuDay has reported significant in-kind donations.  PSR ¶ 13.  It started as a small charity with only $231,656 in reported in-kind donations in 2013.  PSR ¶ 13.  As time went on, that value ballooned and NuDay reported $70,906,685 in in-kind donations in 2019 and $66,679,543 in 2020.  PSR ¶ 13.  By way of comparison, in 2019 the Syrian American Medical Society Foundation reported $41,462,868 in donations, OXFAM America reported $73,459,476 in donations, and Islamic Relief USA reported $90,589,805 in donations.  PSR ¶ 14.

Part of NuDay's operations entailed shipping containers of donated goods to Syria.  Even though it was a charity, NuDay was still required to obtain a license and file an EEI for its exports.  PSR ¶ 17.  NuDay used a U.S. company called AJ Worldwide Services to ship its

containers across the Atlantic to Mersin, Turkey.  PSR ¶ 18.  From there, another company called

Safir Forwarding would transship the containers from Turkey into Syria.  PSR ¶ 18.  Although

AJ Worldwide filed export and shipping documents with the appropriate authorities, NuDay was

the actual exporter and thus was responsible for providing accurate information to AJ

Worldwide.  PSR ¶ 18.

NuDay initially obtained an export license in November 2013.  PSR ¶ 20.  After the first

license expired in January 2015, NuDay applied for additional licenses.  PSR ¶ 20.  The

Commerce Department required additional information about the license requests, but NuDay

did not respond.  PSR ¶ 20.  At that point, NuDay could not export any additional items to Syria;

nevertheless, it continued exporting.  PSR ¶ 20.  For example, between 2016 and 2018 alone,

NuDay exported 94 shipments without a license.  PSR ¶ 21.  And while NuDay obtained licenses

in 2019 and 2020, the licenses authorized exports totaling approximately $26,000 only.  PSR

¶ 22.  Nevertheless, NuDay claimed to export tens of millions of dollars' worth of goods to Syria

both years.  PSR ¶ 22.

NuDay took steps to affirmatively provide false information on their shipping paperwork.

PSR ¶ 24.  For example, AJ Worldwide records indicate that NuDay altered the claimed value of

goods to ensure that each shipment fell under the $2,500 reporting threshold requiring an EEI.

PSR ¶ 24.  Spreadsheets for three different shipments listed the total value of goods at $1,975.

PSR ¶ 24.  Rather than provide individual values for each good listed therein, NuDay simply

divided $1,975 by the number of items.  PSR ¶ 24.  Moreover, NuDay falsely reported that the

end destination of the containers was Turkey.  PSR ¶ 24.  In reality, the containers were destined

for Syria or other countries subject to export restrictions like Yemen.  PSR ¶ 24.  By concealing

the true consignee, NuDay evaded the licensing requirement.  PSR ¶ 24.

In fact, NuDay never filed an EEI until 2021. This is despite NuDay, by its own claims, having made 116 shipments to Syria between May 2018 and December 2021 totaling $104 million. PSR ¶ 25. These shipments include the three shipments charged in the Information, which NuDay claims were worth between approximately $4.2 and $8.4 million. PSR ¶ 26.

## II.    Guidelines Applicability

The parties agree with Probation's determination that because this is an organizational defendant, there is no Guideline imprisonment range. Rather, the maximum sentence for this defendant is a term of probation of five years. PSR ¶ 54. The maximum fine is $10,000 per count, for a total of $30,000. PSR ¶ 55. The defendant has already deposited the stipulated fine and special assessment with the Clerk of Court.

## III.    Argument

The sentencing statute, 18 U.S.C. § 3553, sets forth the factors district courts must consider in imposing a just sentence. Those factors include "the nature and circumstances of the offense," "the history and characteristics of the defendant," and the "need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law," and "to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(1) & (2).

The defendant committed a serious offense. As set forth in the plea agreement, it caused a freight forwarder to fail to file accurate export documentation in connection with dozens of shipments to Syria purportedly worth over $100 million. That amount is stunning. While NuDay is a charity, that does not exempt it from complying with U.S. export laws and regulations. As alluded to earlier, our Government relies on exporters to truthfully disclose what goods are being shipped where to ensure that hostile foreign actors do not get their hands on weapons and dual-use technologies. Moreover, this was a knowing violation of federal law, and

NuDay's senior management, particularly Nadia Alawa, participated in and directed this offense.

Nevertheless, there are mitigating factors that the Court should consider in imposing a sentence. First and foremost, NuDay is a charitable organization with no criminal history, and this sort of prosecution is unprecedented in this Court. Indeed, NuDay's shipments were intended for a bona fide humanitarian purpose, and consisted primarily of donated consumer goods and low-level technology. This was not a case where NuDay was exporting weapons or even dual-use technologies to Syria. Second, after this investigation became overt, the defendant immediately took steps to rectify the situation. Those measures included retaining qualified counsel and a third-party compliance consultant to ensure that the charity complies with U.S. export laws and regulation. And third, NuDay has already begun to implement the terms of the plea agreement, removing the Alawa family entirely from its operations.

Taken altogether, these factors weigh strongly in favor of the stipulated sentence, which consists of the maximum term of probation and a fine near the statutory maximum amount.

## IV. Conclusion

For the foregoing reasons, the Government respectfully requests the Court impose the parties' stipulated sentence.

Respectfully submitted,

JANE E. YOUNG
United States Attorney

Dated: December 12, 2023        By:    /s/ Alexander S. Chen
                                       Alexander S. Chen
                                       Assistant U.S. Attorney
                                       53 Pleasant Street, 4th Floor
                                       Concord, New Hampshire 03301
                                       (603) 225-1552
                                       Alexander.chen@usdoj.gov